Michael O'Neal Wiggins was indicted for the murder of his brother, Billy Joe Wiggins, a violation of § 13A-6-2, Code of Alabama 1985. He was found guilty by a Morgan County jury of the lesser included offense of manslaughter and was sentenced to 10 years' imprisonment.
On the evening of July 27, 1983, the appellant and his brother, Billy Joe, got into an argument over the use of a car which they had recently bought. The two men stood in the front yard of their mother's house arguing until their sister, Connie Wiggins, told them to quit fighting and to go into the house. Ms. Wiggins, who was sitting on the front porch with some friends, testified that her brothers went into the house, but that she could still hear them arguing. The appellant testified that after entering the house, he got a .22 caliber pistol from beneath the living room couch and placed it in his pocket, that he and his brother subsequently got into a "scuffle" and that during the scuffle the pistol accidentally discharged, fatally injuring his brother.
 I
The appellant contends that the trial court erred to reversal in refusing to charge the jury on the lesser included offense of criminally negligent homicide. "It is well established under Alabama law that an individual accused of the greater offense *Page 1048 
has a right to have the court charge on the lesser offenses included in the indictment when there is a reasonable theory from the evidence to support that position." Womack v. State,462 So.2d 1020, 1021 (Ala.Cr.App. 1985); Chavers v. State,361 So.2d 1106 (Ala. 1978). An instruction on criminally negligent homicide is proper only where the victim's death was caused by the defendant's inadvertent creation and subsequent disregard of a risk of harm of which he should have been aware, but which in fact he was not aware of. Weems v. State, 463 So.2d 170
(Ala. 1984); Phelps v. State, 435 So.2d 158 (Ala.Cr.App. 1983); Model Penal Code and Commentaries § 210.04, Comment 1. To warrant the giving of such an instruction there must be some evidence that the defendant was not aware of the risk he was creating. Wakefield v. State, 447 So.2d 1325 (Ala.Cr.App. 1983); § 13A-2-2, Code of Alabama 1975.
In Robinson v. State, 441 So.2d 1045, 1047 (Ala.Cr.App. 1983), this court observed that a person "who intentionally draws a gun in response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun might discharge; therefore, he cannot be guilty of mere criminal negligence."
The appellant testified that he procured the gun from beneath the couch and put it in his pocket to "scare off" his brother. The evidence was conflicting as to whether the appellant had drawn the gun from his pocket or whether it had fallen out during the struggle. In any event, the appellant stated that the pistol was lying on the floor for several minutes while he and his brother were fighting. He testified that they both grabbed for the gun at the same time, but that it was his brother who picked the gun up. The appellant stated that, in an effort to protect himself, he grabbed for the gun his brother was holding. As he hit his brother's arm, the gun discharged, injuring his brother. The pistol once again fell to the floor but this time it was the appellant who succeeded in getting the weapon. Appellant stated that his brother "seemed real fierce and mad" and tried to take the gun away from him. During the struggle which ensued, the pistol went off a second time, killing appellant's brother.
The present case is factually similar to Wakefield v. State,447 So.2d 1325 (Ala.Cr.App. 1983). In Wakefield, the defendant maintained that the decedent had threatened him with a pistol and that he was attempting to take the gun away from the decedent when it accidentally discharged. We held that a jury instruction on criminally negligent homicide was not warranted in that case because there was no reasonable theory to support an inference that the defendant was unaware of the risk.Wakefield, 447 So.2d at 1326.
 "(W)e understand deceased was endeavoring to take the pistol away from appellant, or was trying to prevent appellant from shooting him with the pistol. If either fact be true, then the issue of negligent homicide is not the case; that is, if appellant was attempting to shoot deceased, it could not be negligent homicide; if he was not attempting to shoot deceased, and the pistol was accidentally discharged, it would simply be an accident." Wakefield, id. (quoting Williams v. State, 45 Tex.Crim. R., 75 S.W. 859, 862 (1903).
Likewise, we find no evidence in this case that the appellant was unaware of the risk created. Consequently, there was no basis for giving a charge on criminally negligent homicide.
 II As an additional point of error, the appellant contends that the trial court should not have allowed Katrina Robinson to testify as to a statement made by Connie Wiggins. The testimony of Mrs. Robinson to which the appellant objects is as follows:
"A: Connie, she told us to run off the porch —
 "MR. CHENAULT: Judge, we object to what Connie told this witness in the absence of the defendant.
". . .
 "THE COURT: I believe that conversation has been brought into by that *Page 1049 
first witness [Connie Wiggins], so overruled.
"MR. CHENAULT: We reserve an exception.
 "THE COURT: I don't believe there was any objection to it at that time.
 "Q: (By Mr. Burrell): What was said and done right after they went inside?
 "A: After they went in the house Connie told us to run around the house and at first we kind of like hesitated, and then she told us again. She said, `Y'all better go around the house because Michael has a gun, and bullets doesn't [sic] have eyes.'"
As the above passage indicates, the facts testified to by Mrs. Robinson had previously been elicited during direct examination of Connie Wiggins. Ms. Wiggins testified:
"A: I told them, `Bullets don't have eyes.'
"Q: `Bullets don't have eyes.'
"A: Uh-huh. I said, `I don't know what might happen.
It would be best we get off the porch.'"
The appellant concedes in his brief that the above testimony by Ms. Wiggins was admissible. The admission of an otherwise inadmissible statement does not necessarily constitute error. It may be merely cumulative of other evidence. If it is cumulative, even of improper evidence already admitted without objection, and even if otherwise inadmissible, it may be received without error. Nettles v. State, 435 So.2d 146
(Ala.Cr.App.), aff'd, 435 So.2d 151 (Ala. 1983); Chambers v.State, 400 So.2d 436 (Ala.Cr.App. 1981); Robinson v. State,342 So.2d 1331 (Ala.Cr.App. 1977); A.R.A.P. 45. After one witness has testified to her own statement, no error occurs when another witness repeats that statement. We also note that in this instance, the statement was not offered as proof of the matter stated, and so, was not violative of the hearsay rule.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.